O

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

RICHARD BOISE CLAYTON, §
§
        Plaintiff, §
§
v. §    CIVIL ACTION NO. H-03-5715
§
FEDERAL EXPRESS CORPORATION, §
§
        Defendant. §

MEMORANDUM AND ORDER

Pending is Defendant Federal Express Corporation's Motion for Summary Judgment (Document No. 16). After carefully considering the motion, response, and the applicable law, the Court concludes that the motion should be granted.

I. Background

According to Federal Express Corporation ("FedEx"), it terminated its long-time employee Plaintiff Richard Boise Clayton ("Clayton") on February 5, 2003, after he had received a combination of three performance reminders or warning letters--for repeated attendance and tardiness violations--within a 12-month period. Clayton, however, alleges that FedEx violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA") by subjecting him to a hostile work environment and terminating him based on his age, which was 57.

Clayton was working as a structures mechanic for Flying Tigers when it merged with FedEx in 1989. For the next eight years Clayton served as an aircraft mechanic technician ("AMT") for FedEx in Los Angeles and Memphis. He then moved to Houston, where he worked as a senior AMT at George Bush Intercontinental Airport until his termination in 2003. Beginning in March, 2002, Clayton, along with his wife, also operated a roadside/locksmith service. *See* Document No. 16 ex. 1, at 60-61, 87-88. Clayton would generally spend 4-5 hours each weekday after his FedEx shift and 16 hours each weekend operating this business. *See* id.

Clayton's age discrimination and harassment complaints are based on the conduct of only Bogie Loniewsky, who was Clayton's direct manager in Houston. *See* id. at 16-17. Clayton alleges that Loniewsky harassed him by: (1) assigning him more duties than other AMTs; (2) refusing to let him take vacation time to recover from back spasms that required heavy medication; (3) requiring him to create a "toolboard," making it difficult for him to finish the project, and then yelling at him when it wasn't finished as anticipated; (4) criticizing the amount of time Clayton took to repair a plane when he came in on a day off; (5) issuing Clayton a warning letter for failing to call Loniewsky about missing work even though Clayton states that he had called him and Loniewsky didn't answer; (6) assigning more work to Clayton if Clayton said that his locksmith business was going well; (7) eliminating an AMT

position on the 6:30 p.m. to 3:00 a.m. shift so that Clayton would have to work the 3:30 a.m. to noon shift; (8) sending Clayton to Memphis for unnecessary training; and (9) criticizing him for arriving to work at 4:30 a.m. rather than 3:30 a.m. (even though Clayton wasn't scheduled to arrive until 6 a.m.) on the erroneous grounds that Clayton had signed up on an overtime list. *See* id. at 17-68; 161-64.  Clayton thought that Loniewsky was trying to "get rid of me," but did not consider his age at all related to the matter until he heard from A.J. Gillian, another senior AMT, that Loniewsky had once remarked to George Reves "that Houston would be a good station once we get rid of the old mechanics, old guys, or something like that."  Id. at 21-23, 78-79.

Although Clayton now believes his termination was age-related, it was preceded by a number of warnings and counseling sessions on FedEx's absence and tardiness policy.  FedEx's Maintenance and Engineering Administrative Manual 2-1-900 (the "Manual") contains the Attendance Policy and Punctuality Standards for Hourly Maintenance Employees, which "is not intended to discourage employees from seeking time off due to illness or other legitimate reasons," but rather "to discourage unwarranted or unannounced absenteeism or tardiness, while ensuring fair treatment of employees."  *See* id. ex. 23; *cf*. ex. 24.  Under the Manual, "[a]n absence occurrence is defined as a consecutive, uninterrupted period of time the employee is absent that cannot be considered a

3

tardiness occurrence or an authorized absence." *See* id. ex. 23; *cf.* ex. 24. A "tardiness occurrence" happens when an employee is not at his work station prepared to begin work at a scheduled shift start or the end of a break/meal period. *See* id. exs. 23, 24. "A tardiness occurrence in excess of 4 hours is considered an absence." Id. Four absence or tardiness occurrences within a six-month period result in an unsatisfactory score for attendance on an employee's Performance Review, and require that he or she refer to and follow a Performance Improvement Policy ("PIP"). *See* id.

In February, 1999, Loniewsky verbally counseled Clayton about four "sick occurrences" that had happened within the preceding six months, and advised him of the Manual's requirements. *See* id. ex. 27. On August 6, 2001, Loniewsky issued to Clayton a Performance Reminder for seven tardiness occurrences in the preceding year, four of which occurred within four months. *See* id. ex. 4. Clayton admits that he was tardy as asserted, that Loniewsky directed him to the Manual's requirements, and that he (Clayton) received all attachments to the Performance Reminder, including the Manual and the PIP. *See* id. ex. 1, at 98-100; ex. 4. The Performance Reminder warned that, under the PIP, "your receipt of an additional performance reminder for this and any other performance problem may subject you to additional discipline up to and including a decision day and personal performance planner and/or termination." Id. ex. 4. Clayton acknowledges that he had

4

the right to appeal the Performance Reminder through FedEx's Guaranteed Fair Treatment ("GFT") or Equal Employment Opportunity ("EEO") process, but did not do so.  See id. ex. 1 at 100.

On November 28, 2001, Loniewsky issued to Clayton a Written Counseling for his four "sick occurrences" within the preceding year, but "without any documentation indicating the reason for your absence."  Id. ex. 5.  The Written Counseling acknowledged that Clayton was meeting the Manual standard of not more than three occurrences in any six-month period, but warned that he had "established a pattern of absenteeism."  See id.  The Written Counseling further stated that Clayton would have to provide a physician's statement indicating the reason for his absences and, in the future, contact Loniewsky or another member of management as soon as possible (preferably an hour) before the start of his (Clayton's) shift if he would be unable to attend work.  See id.[1] Continuation of the absenteeism would "result in additional discipline in accordance with the [PIP]."  Id.  However, the Written Counseling did advise Clayton to review attached Family Medical Leave Act ("FMLA") materials to see if he was eligible for FMLA protection.  See id.  Clayton did not pursue the issue of FMLA leave, except to call Human Resources representative Richard

---

[1] In deposition testimony, Clayton stated that he had in fact given Loniewsky documentation indicating the reason for his absences, but later acknowledged that he probably did so *after* receiving the Written Counseling.  See Document No. 16 ex. 1, at 101-03.

Champion ("Champion"), for whom he did not leave a specific message. *See* id. ex. 1, at 102-06.[2]  Loniewsky met with Clayton for a follow-up on November 30th, however, where Loniewsky recognized that Clayton had been tardy only once since June, and that this was a "great improvement." *See* id. ex. 28.

On February 27, 2002, however, Loniewsky issued to Clayton a second Performance Reminder for violating FedEx punctuality, sick leave, and notification procedures. *See* id. at 106-07; ex. 6. Clayton admitted in deposition testimony that he sometimes had trouble waking up on time, and would be delayed once in a while by a stalled train on the railroad tracks that cross the road exiting his subdivision. *See* id. ex. 1, at 110-13.  The second Performance Reminder required Clayton to take a "Decision Day" and draft a personal performance agreement containing detailed actions and a timetable to correct his performance problems. *See* id. ex. 6. The Performance Reminder also warned Clayton that "[s]ince you now have 2 active disciplinary notifications, please be aware that receipt of a third disciplinary notification within the next 12 months may result in termination." Id.[3]  Clayton did not appeal

---

[2] Clayton explained in his deposition that he did not pursue the FMLA issue because he believed that Loniewsky would have told him outright if he qualified for FMLA leave, and thought Loniewsky might be trying to set him up. *See* Document No. 16 ex. 1, at 105. Clayton also thought that the FMLA would only apply to his wife, not him. *See* id.

[3] It is uncontroverted that the Written Counseling issued in November, 2001, did not count as a "disciplinary notification."

the Performance Reminder, and drafted a Performance Agreement committing to the following steps to improve performance in attendance and punctuality:

- I have already informed you that my wife is taking an active part in assuring my wake up time is adhered to.
- I have bought additional alarm clocks that are not dependent on house power that fails on occasion.
- I am planning to get to work fifteen to thirty minutes before my regular shift start time.
- If I should have a need to miss or be late I will call my manager or his manager collect one hour before my shift.

Id. ex. 7.  Even though Clayton originally drafted the Performance Agreement as committing himself to "no absenteeism or tardiness" for ninety days, Loniewsky modified the Performance Agreement to make it more lenient, simply requiring compliance with the standards set forth in the Manual and "improvement in attendance and notification."  See id. ex. 1, at 114-16; ex. 7.[4]

Although Clayton's attendance in the next few months improved, he received a Written Counseling on September 17, 2002, for missing 20 "meteor scans," which are an identification badge ("ID badge") scans analogous to punching in or out of a time clock.  See id. ex. 1, at 117-18; ex. 9.  Clayton admits that he would sometimes

---

[4] During the summer of 2002, Clayton experienced back problems that required him to take several weeks off from work.  See id. ex. 1, at 38-39.  He received a temporary work release in July that allowed him to return to work, but required that he not lift more than twenty pounds.  See id. at 117; ex. 8.

forget to scan in, or would accidentally leave his ID badge at home or in his car. *See* id. ex. 1, at 118.[5] In the Written Counseling, Loniewsky stated that Clayton would have to notify him of future failures to remember the ID badge, but could use "personal business," "floating holiday," or vacation time to cover the time period necessary to return home and get the ID badge. *See* id. at 119; ex. 9.[6]

On December 12, 2002, Clayton received a Warning Letter from Loniewsky stating that Clayton's attendance since his February 27, 2002, Performance Reminder had not improved to the standards required by the Manual. *See* id. ex. 10. In the preceding year, Clayton had recorded five sick occurrences, four of which were within a six-month period. *See* id. In addition, Clayton had recorded three tardy occurrences and six missed meteor scans, and had failed to notify management about one of his absences. *See* id. In his deposition testimony, Clayton acknowledged the violations, but argued that other employees would call in just before their shift and take the day off without any trouble from Loniewsky. *See* id. ex. 1, at 122-24. Clayton did not, however, explain whether these employees were younger than he, and did not appeal the

---

[5] According to Clayton, employees were required to use ID badges after the terrorist attacks of September 11, 2001. AMTs were also generally required to have their ID badge in order to perform their work tasks. *See* Document No. 16 ex. 1, at 118-19.

[6] As with the previous Written Counseling however, this Written Counseling had no actual disciplinary effect.

Performance Reminder.  *See* id. at 123.[7]  The Warning Letter stated that it would be active for 12 months, and that "since you now have 2 disciplinary notifications, please be aware that receipt of a third disciplinary notification (i.e., any combination of warning letter and/or reminders) within the next 12 months may result in termination."  *See* id. ex. 10.[8]

On January 17, 2003, Clayton called Loniewsky at 5:50 a.m. (approximately two hours after his scheduled start of 3:30 a.m.) to state that he must have had a power failure, but would be leaving for work shortly.  *See* id. ex. 1, at 126; ex. 11.  Clayton then realized that he was under the effect of a narcotic medication he had taken for a migraine, and decided to sleep a bit more to see if the effect would subside.  *See* id. ex. 1, at 127.[9]  Meanwhile, Loniewsky called the lead employee at Clayton's workstation and learned that Clayton had not yet arrived.  *See* id. ex. 11.  When

---

[7] Notably, Clayton stated he thought that Aaron Myles, a mechanic who was younger than he, had also received warning letters and/or performance reminders with respect to tardiness. *See* Document No. 16 ex. 1 at 124-25.

[8] By this time, Clayton's original Performance Reminder of August 6, 2001, was more than a year old, leaving his February 17, 2002, Performance Reminder and December 12, 2002, Warning Letter as the two active disciplinary notifications.

[9] Clayton also believes that the medication is why he did not hear his backup, windup alarm clock. *See* Document No. 16 ex. 1, at 127-28.  When asked why his wife did not wake him up as suggested in the Performance Agreement, Clayton explained that she slept in a separate room and generally did not rise as early as he did. *See* id.

Clayton woke up the second time, he still felt unable to function, and called Loniewsky at 9:11 a.m. to say that he wouldn't be coming in because of a migraine. *See* id. ex. 1, at 127-29; ex. 11. After Loniewsky contacted Champion in Human Resources, Champion confirmed that it was to be treated as an absence occurrence because the tardiness exceeded four hours. *See* id. ex. 11.

On February 5, 2003, Loniewsky issued to Clayton a Performance Reminder "for failing to correct your attendance problem and not maintaining your portion of the performance agreement from February 27, [2002]." *See* id. ex. 12. This Performance Reminder, which constituted the third disciplinary notification within a 12-month period, stated that Clayton's employment would be terminated effective February 4, 2003. *See* id. Clayton appealed the termination through a process where he submitted written statements and met with management, but his termination was upheld by Managing Director Jim Haarbauer, and thereafter by Line Maintenance Vice President David Slonim. *See* id. exs. 13-18. Clayton also filed an EEO complaint alleging, *inter alia*, age discrimination. *See* id. exs. 20-21. A number of months later, he filed the instant action, alleging that he was harassed and discriminated against because of his age. *See* Document No. 1. Clayton seeks damages, interest, costs, and attorney's fees. FedEx now moves for summary judgment on Clayton's claims.

## II. Summary Judgment Standard of Review

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 106 S. Ct. 2548, 2553 (1986).

Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. <u>Morris v. Covan World Wide Moving, Inc.</u>, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. <u>Id.</u> "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." <u>Id.</u>

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." <u>Anderson v. Liberty Lobby, Inc.</u>, 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio</u>

Corp., 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  Id.  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  Anderson, 106 S. Ct. at 2513.

### III.  Discussion

#### A.  Termination

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an individual because of that person's age. *See* 29 U.S.C. § 623(a)(1); Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004).  Clayton does not argue that he has any direct evidence of age discrimination; thus, his ADEA claims must be analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 93 S. Ct. 1817 (1973) and Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004); *see also* Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005).

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2106 (2000). The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. Id. The burden on the employer at this stage "is one of production, not persuasion; it 'can involve no credibility assessment.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 113 S. Ct. 2742, 2748 (1993)). If the employer sustains its burden, the prima facie case is dissolved, and the burden shifts back to the plaintiff to establish either: (1) that the employer's proffered reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic (mixed-motive alternative). Rachid, 376 F.3d at 312. If the plaintiff "demonstrates that age was a motivating factor in the [employer's decision to terminate him], it then falls to the [employer] to prove 'that the same adverse employment decision would have been made regardless of discriminatory animus.'" Id. (quoting Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1217 (5th Cir. 1995)). If the employer fails to carry this burden, the plaintiff prevails. Id.

FedEx argues that Clayton cannot establish a prima facie case of age discrimination with respect to his termination. Even

13

assuming that Clayton can do so, however, FedEx produces a legitimate, nondiscriminatory reason for Clayton's termination: he received three disciplinary notifications within a 12-month period. *See supra* at 3-10.  Clayton argues that the disciplinary notifications were pretextual because he "went from having nearly perfect marks on his performance reports concerning attendance for years to being fired for attendance in one year," and because some of Clayton's absences involved back and migraine problems of which FedEx was aware.  *See* Document No. 17, at 5.

First, Clayton does not actually produce his performance reports.  Second, although Clayton testified at his deposition that he received high marks for attendance and punctuality in performance reviews conducted through July, 2002 (in spite of his February 27, 2002, Performance Reminder), those reviews do not account for Clayton's *subsequent* receipt of a Written Counseling, Warning Letter, and Performance Reminder--the latter two of which were disciplinary notifications culminating in his termination. *See* Document No. 16 ex. 1, at 69, 213-18.  Clayton also argues that if Loniewsky had permitted him to use vacation time to cover absences caused by Clayton's back problems, he would never have incurred the December 12, 2002, Warning Letter.  *See* id. at 133; Document No. 17, at 2.  Clayton acknowledged in his deposition testimony, however, that he didn't actually know of anyone under Loniewsky's supervision who was permitted to use vacation time in

14

lieu of sick leave. *See* Document No. 16 ex. 1, at 294-95.[10] Although Clayton also points out that he was once considered tardy for being approximately 40 seconds late, and that his third disciplinary notification was issued only about 20 days before his oldest pending disciplinary notification would have been more than 12 months old, he does not deny that he violated FedEx's policy and procedures on attendance and tardiness. *See* id. at 69, 189.

Ultimately, the only age-related summary judgment evidence Clayton identifies is Gillian's claim that Loniewsky once told a new hire (George Reves) that the problem with the Houston station was the old mechanics--and that it "would be better if I got rid of the old guys." *See* Document No. 17 ex. 2; ex. 3, at 32. Generally, where remarks "are not the *only* evidence of pretext, they are probative of discriminatory intent." Palasota v. Haggar Clothing Co., 342 F.3d 569, 577 (5th Cir. 2003). However, the "stray remarks" doctrine still applies "where the plaintiff has failed to produce substantial evidence of pretext." Auguster v. Vermilion Parish Sch. Bd., 249 F.3d 400, 405 (5th Cir. 2001); *see* Wallace v. Methodist Hosp. Sys., 271 F.3d 212, 222 (5th Cir. 2001). Under this doctrine, remarks may provide sufficient evidence of discrimination if they are (1) age related; (2) proximate in time to the termination; (3) made by an individual with authority over

---

[10] Apparently this practice had occurred when Clayton was stationed in Memphis. *See* Document No. 16 ex. 1, at 295.

15

the termination decision; and (4) related to the termination decision. *See* Auguster, 249 F.3d at 405; Wallace, 271 F.3d at 222; Brown v. CSC Logic, Inc., 82 F.3d 651, 655-56 (5th Cir. 1996).[11] Loniewsky's alleged comment is arguably age-related, and made by one with authority over the employment decision at issue.[12] However, it is not shown that this comment was at all proximate in time to Clayton's termination. Gillian "guessed" that the comment might have been made within six months of the termination, but admitted that he didn't really remember. *See* Document No. 17 ex. 3, at 32-33. Clayton thinks that he might have heard Gillian recount the statement more than a year before his (Clayton's) termination. *See* Document No. 16 ex. 1, at 23. Nor does Clayton explain why Loniewsky's generalized comment, which was never directed specifically at him, was related to his termination. Thus, Loniewsky's statement does not satisfy the Brown criteria, and is regarded only as a stray remark. *Cf.* Moody v. United States Sec'y of the Army, 72 Fed. Appx. 235, 239 (5th Cir. Aug. 21, 2003)

---

[11] Comments vague and remote in time are insufficient, but specific comments made over a lengthy period of time are sufficient. *See* Brown, 82 F.3d at 655-56.

[12] Although it is uncontroverted that Loniewsky's termination decision had to be approved by higher management, Clayton testified that Loniewsky had the power to "slant things the way he wants"-- and that Senior Manager Liddell Pan and Managing Director Jim Haarbauer functioned as "rubber stamps" for Loniewsky's decision. *See* Document No. 16 ex. 1, at 131, 172-74; Roberson, 373 F.3d at 653 (explaining that discriminatory animus of one with leverage over official decisionmaker can be imputed to official decisionmaker).

(unpublished) (holding that age-related remarks did not raise a genuine issue of material fact sufficient to avoid summary judgment where plaintiff did not indicate proximity of remarks to employment action); Moore v. United Parcel Serv., No. CIV.A. 3:03-CV-1399L, 2004 WL 2339792, at *4 (N.D. Tex. Oct. 15, 2004) (unpublished) (stating that supervisor's racial epithets that preceded plaintiff's termination by at least six months were not proximate in time to his termination).

Furthermore, this is a case where, in spite of Loniewsky's single stray remark, the summary judgment record "conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision. . . ." Reeves, 120 S. Ct. at 2109. Under such circumstances, summary judgment is appropriate. See id.; cf. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 229 n.19 (5th Cir. 2000)(explaining that under Reeves and Fifth Circuit precedent, "an overwhelming case that the adverse employment actions at issue were attributable to a legitimate, nondiscriminatory reason will not be defeated by remarks that have no link whatsoever to any potentially relevant time frame"). Moreover, Loniewsky's stray remark uttered to a third party six months or a year before Clayton's discharge is insufficient by itself to raise a genuine issue of material fact that FedEx's reason for Clayton's termination, even if true, was also accompanied by an age-based discriminatory motive.

B.   <u>Hostile Work Environment</u>[13]

To make a prima facie case of a hostile work environment, Clayton must establish that: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on age; and (4) the harassment complained of affected a term, condition, or privilege of employment. *See* <u>Celestine v. Petroleos de Venezuela, SA</u>, 266 F.3d 343, 353 (5th Cir. 2001).[14]  To affect a term, condition, or privilege of employment, the harassment must be "'sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment.'" <u>Id.</u> (quoting <u>Watts v. Kroger Co.</u>, 170 F.3d 505, 509 (5th Cir. 1999))  In other words, "the alleged harassment must have created an environment that a reasonable person would find hostile or abusive." <u>Septimus v. Univ. of Houston</u>, 399 F.3d 601, 611 (5th Cir. 2005).  This "depends on the

---

[13] The Fifth Circuit has not definitively stated that the hostile work environment framework extends to ADEA harassment claims.  *See* <u>McNealy v. Emerson Elec. Co.</u>, 121 Fed. Appx. 29, 34 n.1 (5th Cir. Jan. 17, 2005) (unpublished) (assuming arguendo that hostile work environment framework extends to ADEA claims).  Thus, the discussion that follows will assume without deciding that the hostile work environment framework may extend to an ADEA claim.

[14] Usually a plaintiff must also show that his employer knew or should have known of the harassment, and failed to take prompt remedial action.  *See* <u>Celestine</u>, 266 F.3d at 353.  The plaintiff need not do so, however, where the alleged harasser is a person with immediate (or higher) supervisory authority over him.  *See* <u>id.</u>

totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." Id.

Although Clayton complains of harassment as set forth above, he relies solely on Loniewsky's alleged "get rid of the older guys" remark to show that the harassment was based on age. *See* Document No. 17, at 7.  This single remark--which was not directed specifically at Clayton and which he himself did not hear Loniewsky utter, does not establish a hostile work environment. *See* Moody, 79 Fed. Appx. at 239.  Furthermore, Clayton demonstrates no connection between the remark and the complained of harassment other than his own, after-the-fact subjective belief that the two were related.  Thus, Clayton fails to establish a prima facie case of a hostile work environment, and  FedEx is entitled to summary judgment on this claim as well.

## IV. Order

For the reasons set forth, it is hereby

ORDERED that Defendant Federal Express Corporation's Motion for Summary Judgment (Document No. 16) is GRANTED, and Plaintiff

Richard Boise Clayton's claims against Defendant Federal Express Corporation are DISMISSED with prejudice.

The Clerk will enter this Order and send copies to all counsel of record.

SIGNED at Houston, Texas on this 1st day of June, 2005.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE